UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KENNETH B. DAVENPORT,        :    CIVIL NO. **4:05-CV-2347**
                             :
            Plaintiff        :    (Judge Jones)
                             :
       v.                    :    (Magistrate Judge Smyser)
                             :
SHARON BURKS,                :
ROBERT S. BITNER,            :
EDWARD KLEM,                 :
KENNETH CHMIELEWSKI,         :
LT. DATCHKO,                 :
C.O. BRZOZOWSKI,             :
C.O. WINGARD,                :
PATRICIA RAMER,              :
DONNA ROMAN and              :
VINCENT MOONEY,              :
                             :
            Defendants       :

**REPORT AND RECOMMENDATION**

I. Background and Procedural History.


     The plaintiff, a prisoner proceeding *pro se*, commenced

this 42 U.S.C. § 1983 action by filing a complaint on

November 14, 2005.

The defendants named in the complaint are: 1) Sharon Burks, the former Chief Grievance Officer of the Pennsylvania Department of Corrections (DOC); 2) Robert S. Bitner, the former Chief Hearing Examiner of the DOC; 3) Edward Klem, the former Superintendent of the State Correctional Institution at Mahanoy (SCI-Mahanoy); 4) Kenneth Chmielseski, the Deputy Superintendent for Centralized Services at SCI-Mahanoy; 5) Lieutenant Datchko, a security lieutenant at SCI-Mahanoy; 6) C.O. Brzozowski, a corrections officer at SCI-Mahanoy; 7) C.O. Wingard, a corrections officer at SCI-Mahanoy; 8) Patricia Ramer, the school principal of the Education Department at SCI-Mahanoy; 9) Donna Roman, a library assistant at SCI-Mahanoy; and 10) Vincent Mooney, a captain of intelligence at SCI-Mahanoy and subsequently a major of the guard at the State Correctional Institution at Dallas (SCI-Dallas).

The plaintiff alleges the following facts in his complaint. In April of 2004, legal paperwork was confiscated from the plaintiff and he was given a misconduct for possession of contraband. The legal paperwork that was

2

confiscated included a legal envelope from a federal court
addressed to an inmate Middleton with two blank habeas corpus
forms inside; a three-ring binder containing a Massachusetts
case - *Commonwealth v. Perez* - which had been sent to the
plaintiff by Perez's mother; and a brief that had been filed
by former Attorney General Preate in the case of *Buck v.
Beard* and which had been sent to the plaintiff by Preate in
October of 2003. The hearing examiner dismissed the
misconduct with a notation that it may be rewritten with more
documentation.

In April of 2004, the plaintiff sent a request to
defendant Ramer requesting clarification of the policy
regarding an inmate assisting other inmates with legal
matters while in the law library and requesting
reconsideration of the policy that only legal materials
pertaining to a prisoner's own case may be typed on the
typewriter and of the policy that provides that letters,
petitions or pleadings which belong to another individual are
considered contraband. The plaintiff received a response
stating that he is "not allowed to have others['] property or

3

type in the law library other than legal."  The plaintiff
submitted further requests regarding the policy about inmates
assisting other inmates with legal matters.

On September 13, 2004, a meeting between the plaintiff,
the staff librarian and defendants Chmielewski and Ramer
took place.  During this meeting, staff acknowledged that
they had received the plaintiff's request slips questioning
the policy regarding inmates assisting other inmates with
legal matters.  The plaintiff was told that no provision
would be made for two inmates to meet in the library for the
purpose of mutual legal assistance.  Defendant Chmielewski
also told the plaintiff that he would call the Chief
Counsel's office for clarification regarding a case cited by
the plaintiff - *Carter v. McGrady,* 292 F.3d 152, 158 (3d
Cir. 2002) - in which the United States Court of Appeals for
the Third Circuit noted in passing that "inmates at SCI-
Mahanoy are in fact permitted to act as jailhouse lawyers
provided that they do not demand or receive payment for their
services."

4

On September 20, 2004, the plaintiff submitted a request slip to defendant Chmielewski seeking clarification about library issues and asking whether inmates are permitted to act as jailhouse lawyers. The plaintiff also again cited to the *Carter* case*.* Defendant Chmielewski responded to the request but did not directly answer the plaintiff's inquiry about the *Carter* case or whether inmates are permitted to act as jailhouse lawyers.

On November 5, 2004, the plaintiff was issued an official warning for improper use of the law library typewriter after he used the law library typewriter to type an interlibrary loan request for a book on math theory.

On December 22, 2004, defendant Roman confiscated legal materials from the plaintiff and issued him a misconduct charging him with threatening an employee or family member with bodily harm, refusing an order, and possession of contraband. Subsequently on that same day, defendants Roman, Brzozowski and Wingard prepared and issued nine other misconducts charging the plaintiff with doing

5

legal work for other inmates and possession of contraband -
i.e. legal paperwork belonging to other prisoners.  The
plaintiff was immediately placed in disciplinary custody.

The misconduct initially issued by defendant Roman was
dismissed but was reissued on December 30, 2004.  A hearing
on the reissued misconduct was held on January 3, 2005.  The
hearing examiner dismissed the charge of threatening an
employee and the charge of possession of contraband, but he
found the plaintiff guilty of refusing an order and
sanctioned the plaintiff to sixty days in disciplinary
confinement.  The plaintiff appealed the hearing examiner's
decision and the Secretary of the DOC remanded the misconduct
for a rehearing.  A rehearing was held on April 7, 2005,
after the plaintiff had been transferred to SCI-Dallas, and
the plaintiff was found guilty of disobeying a prior order
not to bring legal paperwork belonging to other prisoners to
the law library.

After the plaintiff responded affirmatively to an
inquiry by defendant Chmielewski about whether the plaintiff

6

had legal materials in his property belonging to other inmates, the plaintiff was given another misconduct on January 5, 2005 and charged with possession of contraband. The hearing examiner found the plaintiff guilty and the plaintiff received an additional thirty days of disciplinary custody.  The plaintiff administratively appealed the hearing examiner's decision but the decision was upheld on appeal.

The other nine misconducts that the plaintiff had received on December 22, 2004 were eventually consolidated into one misconduct reissued on January 10, 2005.  On January 14, 2005, the hearing examiner found the plaintiff guilty of possession of contraband and as a sanction ordered the contraband revoked.  All legal papers which did not have the plaintiff's name on were confiscated from the plaintiff.  The plaintiff administratively appealed the hearing examiner's decision but the decision was upheld on appeal.

On January 13, 2005 and January 18, 2005, the plaintiff filed grievances concerning the prison's policy of prohibiting inmates from offering or receiving legal advice

from other inmates and the policy of prohibiting inmates from
obtaining copies of others' cases, letters or correspondence.
The plaintiff was subsequently interviewed about his
grievances by defendants Mooney and Datchko.  During this
interview the plaintiff and defendant Mooney discussed the
*Carter* case and defendant Mooney stated that he would need a
court order enjoining him from prohibiting the plaintiff from
helping other inmates with their legal cases or having copies
of other cases.  Defendant Datchko asked the plaintiff
whether the president of Families United for Justice was
putting stuff in his head about him being a lawyer.
Defendant Mooney told the plaintiff that he is not an
attorney and that he would not be permitted to help other
inmates.  Defendant Mooney also told the plaintiff that he
would also not be permitted to have copies of other inmates'
cases and that such legal material would be considered
contraband.  Defendant Mooney later formally responded to the
plaintiff's grievance and again indicated that property of
other inmates in the plaintiff's possession is considered
contraband.  The plaintiff appealed the denial of his
grievance, but the decision was upheld on appeal.

8

After the plaintiff's disciplinary confinement time expired, the plaintiff was placed in administrative custody pending a transfer.  The plaintiff was subsequently transferred to SCI-Dallas.  The plaintiff filed grievances regarding his placement in administrative custody and his transfer.

The plaintiff claims that he was transferred in retaliation for filing grievances and for assisting other inmates with legal issues.  The plaintiff also claims that the DOC policy prohibiting inmates from assisting each other with legal matters violates the First Amendment.  The plaintiff further claims that the policy prohibiting an inmate from obtaining photocopies, prints, internet copies, unpublished memorandum opinions, and similar material from cases not specifically related to the prisoner's own case is not supported by a rational or legitimate objective.  The plaintiff is seeking declaratory relief and nominal, compensatory and punitive damages.  He is also seeking injunctive relief in the form of an order expunging the misconducts from his record, transferring him back to SCI-

Mahanoy, and prohibiting the defendants from confiscating from him legal papers simply because they are photocopies and do not have his name in the caption.

On January 27, 2006, a case management order was issued setting various case management deadlines.

On February 10, 2006, the defendants filed a motion to stay this action during the time that defendant Wingard is in active military service in Iraq and a brief in support of that motion.  By an Order dated April 10, 2006, the defendants' motion to stay was granted in part and denied in part.  The motion was granted as to defendant Wingard and the case was stayed as to defendant Wingard until September 1, 2006.  The motion to stay was denied as to the other defendants.

The defendants filed an answer to the complaint on March 2, 2007.

The deadlines in the original case management order have been amended a number of times.  The deadline for completion of discovery expired on April 10, 2007.  *Doc. 38.*

On May 10, 2007, the plaintiff filed a motion to compel discovery.  By an Order dated July 2, 2007, Judge Jones *inter alia* denied the plaintiff's motion to compel discovery, ordered that dispositive motions be filed on or before August 1, 2007, and remanded the case to the undersigned for further proceedings.

On August 16, 2007, the plaintiff filed a motion to obtain non-stenographic depositions pursuant to Fed.R.Civ.P. 31.  By an Order dated August 16, 2007, the undersigned denied that motion for the reason that the deadline for filing discovery-related motions had expired prior to the date the plaintiff filed his motion.  On August 28, 2007, the plaintiff filed a document (doc. 88) entitled "Plaintiff's Objections to the Magistrate Judge's Order of August 16, 2007."  It appears that the plaintiff intended to appeal the

11

Order of August 16, 2007 to the district judge pursuant to Local Rule 72.2.  The plaintiff's objections remain pending.[1]

On July 16, 2007, the plaintiff filed a motion for leave to file a supplemental complaint.  By an Order dated August 24, 2007, the undersigned denied the plaintiff's motion for leave to file a supplemental complaint.  On September 5, 2007, the plaintiff filed objections (doc. 90) to the Order of August 24, 2007.  Again, it appears that the plaintiff intended to appeal the Order of August 24, 2007 to the district judge pursuant to Local Rule 72.2.  The plaintiff's objections remain pending.

On August 1, 2007, the defendants filed a motion for summary judgment.  On September 19, 2007, the defendants' motion for summary judgment was deemed withdrawn because the defendants did not file a brief in support of the motion.

---

[1] Given that an appeal pursuant to Local Rule 72.2 is addressed to the district court judge, unless instructed otherwise, we will not address the plaintiff's September 5, 2007 objections or the other objections filed by the plaintiff that are mentioned later in this Report and Recommendation.

12

The defendants subsequently filed a motion for leave to refile their motion for summary judgment, and by an Order filed on October 4, 2007, the undersigned granted that motion and the defendants' motion for summary judgment was deemed refiled on October 4, 2007.  On October 11, 2007, the plaintiff filed objections (doc. 99) to the Order of October 4, 2007.  Again, it appears that the plaintiff intended to appeal the Order of October 4, 2007 to the district judge pursuant to Local Rule 72.2.  The plaintiff's objections remain pending.

On October 24, 2007, the defendants filed a brief and documents in support of their motion for summary judgment. On October 25, 2007, the defendants filed additional documents in support of their motion.[2]

---

[2] The defendants' brief was not filed within ten days of the October 4, 2007 date their motion for summary judgment was refiled.  However, there is no basis to conclude that the plaintiff was prejudiced by the short delay in the filing of the defendants' brief.  Accordingly, we will not strike the defendants' brief as untimely.

13

The plaintiff requested and received extensions of time to respond to the defendants' motion for summary judgment. On November 30, 2007 and December 18, 2007 the plaintiff filed documents in opposition to the defendants' motion for summary judgment.

On December 17, 2007, the plaintiff filed a motion for leave to file a brief in opposition to the defendants' motion for summary judgment that is in excess of 70 pages.  On December 19, 2007, the plaintiff filed a 73-page brief in opposition to the defendants' motion for summary judgment. By an Order dated December 20, 2007, the plaintiff's motion for leave to file a brief in excess of 70 pages was denied and the 73-page brief filed by the plaintiff was stricken from the record.  The defendants were ordered to file, on or before January 3, 2008, a statement of material facts in accordance with Local Rule 56.1.  The plaintiff was ordered to file, within fifteen days after the defendants had filed their statement of material facts, a response to the defendants' statement of material facts, a brief (not to exceed 35 pages) and any additional summary judgment evidence

14

in opposition to the defendants' motion for summary judgment.
The Order of December 20, 2007, also provided leave to the
defendants to file a reply brief within ten days after the
plaintiff had filed his brief in opposition.  On January 3,
2008, the plaintiff filed objections to the Order of December
20, 2007.  Again, it appears that the plaintiff intended to
appeal the Order of December 20, 2007 to the district judge
pursuant to Local Rule 72.2.  The plaintiff's objections
remain pending.

     On December 17, 2007, the plaintiff filed a motion to
strike two of the declarations filed by the defendants in
support of their motion for summary judgment.  The
declarations were declarations by defendants Brzozowski and
Klem.  On January 14, 2008, the defendants filed a motion for
leave to substitute an executed declaration by defendant
Brzozowski for the unsigned one that had been previously
filed.  By an Order dated January 17, 2008, that motion was
granted.  By an Order dated March 6, 2008, the plaintiff's
motion to strike was denied on the basis that the motion to
substitute the signed declaration of defendant Brzozowski had

been granted and on the basis that the defendants had
submitted a signed declaration by defendant Klem to the court
and had indicated that they would serve on the plaintiff a
copy of the signed declaration of defendant Klem.

On January 16, 2008, the defendants filed a statement
of undisputed material facts.  On February 5, 2008, the
plaintiff filed a response to the defendants' statement of
undisputed material facts.

After requesting and receiving an extension of time, on
February 19, 2008, the plaintiff filed a brief in opposition
to the defendants' motion for summary judgment.  The
defendants have not filed a reply brief.

II.  Rule 56(f) Declarations.

On August 9, 2007 and October 11, 2007, the plaintiff
filed declarations pursuant to Fed.R.Civ.P. 56(f) seeking a
deferred consideration of the defendants' motion for summary
judgment.  The plaintiff is seeking a deferred consideration

16

of the defendants' motion for summary judgment pending the

resolution of various discovery issues which the plaintiff

indicates are still outstanding.

Federal Rule of Civil Procedure 56(f) provides:

If a party opposing the motion shows by
affidavit that, for specified reasons, it cannot
present facts essential to justify its
opposition, the court may:
(1) deny the motion;
(2) order a continuance to enable affidavits
to be obtained, depositions to be taken, or
other discovery to be undertaken; or
(3) issue any other just order.

A Rule 56(f) affidavit or motion must identify with

specificity what particular information is sought; how, if

uncovered, it would preclude summary judgment; and why it has

not previously been obtained. *St. Surin v. Virgin Islands
Daily News, Inc.*, 21 F.3d 1309, 1314 (3d Cir. 1994).

The plaintiff has not shown how the discovery he is

seeking would preclude summary judgment on those claims as to

which we recommend in this Report and Recommendation that

summary judgment be granted.  Moreover, Judge Jones denied

the plaintiff's motion to compel discovery, and some of the discovery that the plaintiff is now seeking was not requested until after the discovery period closed.  For these reasons, the consideration and determination of the defendants' motion for summary judgment should not be deferred on the basis of the plaintiff's Rule 56(f) declarations.

III. Summary Judgment Standard.

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, though the non-moving party must make a showing sufficient to establish the existence of each element of his case on which he will bear the burden of proof at trial." *Huang v. BP Amoco Corp.*, 271 F.3d 560, 564 (3d Cir. 2001); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

"A factual dispute is material if it bears on an essential element of the plaintiff's claim, and is genuine if a reasonable jury could find in favor of the nonmoving party."  *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 580 (3d Cir.  2003).  In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  "Our function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Federal Home Loan Mortgage Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 443 (3d Cir. 2003).

IV. Discussion.

    A. Personal Involvement of Defendants Bitner and Burks.

Defendants Bitner and Burks contend that they are entitled to summary judgment in their favor.  They contend that, under the facts before the court for purposes of the

summary judgment motion, it is not genuinely in dispute that
they had no involvement in the alleged violations of the
plaintiff's rights.

"Liability may not be imposed under § 1983 on the
principle of *respondeat superior*." *Hetzel v. Swartz*, 909
F.Supp. 261, 264 (M.D. Pa. 1995).  Liability under 42 U.S.C.
§ 1983 may only be based upon a defendant's personal
involvement in conduct amounting to a constitutional
violation.  *Hampton v. Holmesburg Prison Officials*, 546 F.2d
1077, 1082 (3d Cir. 1976).  The plaintiff must establish the
involvement of the defendants in the conduct which caused a
violation of the plaintiff's constitutional rights.  *Rode v.
Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  A 42
U.S.C. § 1983 action against state supervisory officials
requires that the defendants actually participated in or had
actual knowledge of and acquiesced in the events forming the
basis of the claims.  *Egan v. Concini*, 585 F. Supp. 801, 804
(M.D. Pa. 1984).

Defendants Bitner and Burks contend that the plaintiff is seeking to hold them liable under a *respondeat superior* theory for their alleged failure to supervise others who allegedly deprived the plaintiff of his rights.  The plaintiff, however, contends that defendants Bitner and Burks were personally involved in the alleged violations of his rights because they refused to take action to correct the violations after the plaintiff made them aware of the violations through his misconduct and grievance appeals.

In some circumstances a grievance may be sufficient to put a prison official on notice of alleged continuing abuse by other prison staff and therefore may show actual knowledge of an alleged constitutional violation and acquiescence in the events forming the basis of a prisoner's claims. *See Atkinson v. Taylor,* 316 F.3d 257, 270-271 (3d cir. 2003)(refusing to hold as a matter of law that correspondence or conversations with prison officials do not constitute sufficient evidence of actual knowledge and acquiescence). *See also Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996)("[A] prison official's knowledge of prison conditions

21

learned from an inmate's communications can, under some
circumstances, constitute sufficient knowledge of the
conditions to require the officer to exercise his or her
authority and to take the needed action to investigate and,
if necessary, to rectify the offending condition.").

     The record in this case contains the detailed
misconduct appeals that the plaintiff submitted to defendant
Bitner and the detailed grievance appeals that the plaintiff
submitted to defendant Burks.  Based on the plaintiff's
misconduct and grievance appeals, a reasonable fact finder
could conclude that defendants Bitner and Burks were aware of
the plaintiff's claims and were in a position to correct any
violations of the plaintiff's rights but failed to do so.
Thus, there is a genuine factual dispute about whether
defendants Bitner and Burks had actual knowledge of and
acquiesced in the events forming the basis of the plaintiff's
claims.  Accordingly, defendants Bitner and Burks are not
entitled to summary judgment on the basis of a lack of
personal involvement.

B. Exhaustion of Administrative Remedies.

Defendants Chmielewski, Datchko, Ramer and Mooney contend that they are entitled to summary judgment in their favor because the plaintiff failed to exhaust administrative remedies against them.

42 U.S.C. § 1997e(a), provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Pursuant to § 1997e(a), the exhaustion of available administrative remedies is mandatory. *Booth v. Churner*, 532 U.S. 731, 739 (2001). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A prisoner must "exhaust all available administrative remedies" regardless of whether

23

the administrative process may provide the prisoner with the relief that he is seeking. *Nyhuis v. Reno*, 204 F.3d 65, 75 (3d Cir. 2000).   "[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial." *Id.* at 77.

Failure to exhaust available administrative remedies is an affirmative defense. *Jones v. Bock,* 127 S.Ct. 910, 921 (2007).   As an affirmative defense, the failure to exhaust available administrative remedies must be pleaded and proven by the defendants. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

42 U.S.C. § 1997e(a) requires proper exhaustion. *Woodford v. Ngo,* 548 U.S. 81 (2006).   In other words, § 1997e(a) requires more than simple exhaustion - i.e. more than that there is no further process available to the inmate within the grievance system. *Spruill v. Gillis*, 372 F.3d 218, 227-31 (3d Cir. 2004).   Section 1997e(a) requires that an inmate follow the procedural requirements set forth in the administrative remedy process that is available to him. *Id. at 231.*   The prison grievance procedures supply the yardstick

for measuring whether exhaustion was proper. *Id. See also*
*Jones v. Bock,* 127 S.Ct. 910, 923 (2007)("The level of detail
necessary in a grievance to comply with the grievance
procedures will vary from system to system and claim to
claim, but it is the prison's requirements, and not the PLRA,
that define the boundaries of proper exhaustion."). "'[T]he
primary purpose of a grievance is to alert prison officials
to a problem, not to provide personal notice to a particular
official that he may be sued.'" *Williams v. Beard,* 482 F.3d
637, 640 (3d Cir. 2007)(quoting *Jones, supra,* 127 S.Ct. at
923).

The Pennsylvania Department of Corrections has
implemented an official Inmate Grievance System.  The
grievance system is governed by Administrative Directive 804
(DC-ADM 804).  DC-ADM 804 sets forth a three-tier
administrative remedy system.  Pursuant to DC-ADM 804, an
inmate is required to present his grievance to the Facility
Grievance Coordinator for initial review within fifteen days
after the events upon which the grievance is based.  The
inmate is required to appeal an adverse determination by the

Facility Grievance Coordinator to the Facility Manager.  From there the inmate must appeal to the Secretary's Office of Inmate Grievances and Appeals.

Initial review of issues relating to misconducts and inmate discipline are completed in accordance with the procedures outlined in Administrative Directive (DC-ADM 801), not the inmate grievance system under DC-ADM 804.  If an inmate is found guilty of a misconduct charge by a hearing examiner, the inmate may appeal to the Program Review Committee (PRC), then to the Superintendent of the institution, and finally to the Chief Hearing Examiner.

Defendants Chmielewski, Datchko, Ramer and Mooney argue that the plaintiff procedurally defaulted his claims against them because the grievances he filed regarding his claims in this case do not mentioned them. *See Spruill*, *supra,* 372 F.3d at 234 (holding that DC-ADM 804 made it mandatory for an inmate to include in his grievance the facts relevant to his claim, that the identity of a defendant is a fact relevant to an inmate's claim, and that therefore it was mandatory for an

inmate to include the identity of the defendant in his
grievance).

The plaintiff contends that defendants Chmielewski,
Datchko, Ramer and Mooney are fairly within the compass of
the specific problems and concerns raised in his grievances.

After reviewing the plaintiff's grievances and appeals,
misconducts and appeals and the report and appeal of the
report placing the plaintiff in administrative custody, we
conclude that there is evidence from which a reasonable
factfinder could conclude that the plaintiff exhausted
available administrative remedies with respect to his claims
against defendants Chmielewski, Ramer and Mooney.  However,
we conclude that there is not sufficient evidence for a
reasonable factfinder to conclude that the plaintiff
exhausted his claims with respect to defendant Datchko.

As to defendants Chmielewski and Ramer, there is
evidence in the record that the plaintiff referred to
defendants Chmielewski and Ramer and his contacts with them

in connection with his appeals of misconducts A70452, A70454
and A458157. *See Doc. 101-15, 101-16 and 101-18, Exhibits to
Declaration of Robert S. Bitner.* Additionally, there is
evidence in the record that defendants Chmielewski and Ramer
were members of the PRC which upheld the decision to place
the plaintiff in administrative custody pending transfer and
that the plaintiff appealed that PRC's decision. *See Doc.
110, Exhibit P and Doc. 21, Attachment I.* Further,
defendants Chmielewski and Ramer are named in grievance
#106936. *See Doc. 21, Attachment H.*

As to defendant Mooney, there is evidence in the record
that defendant Mooney responded to grievance #106936 and
indicated his involvement in the issues raised in that
grievance. The plaintiff's grievance alerted prison
officials to the alleged problem and by identifying himself
as involved in the issues, defendant Mooney excused any
procedural default on the part of the plaintiff in not naming
him in the grievance.

28

Unlike the situation with defendants Chmielewski, Ramer and Mooney, we have not found evidence in the record of the plaintiff's grievances and appeals or misconducts and appeals that would indicate that the plaintiff was complaining about acts by defendant Datchko.  Accordingly, it will be recommended that summary judgment be granted in favor of defendant Datchko based on the plaintiff's failure to exhaust available administrative remedies.

C. Retaliation Claims.

The plaintiff claims that he was placed in administrative custody and transferred from SCI-Mahanoy in retaliation for filing grievances and for assisting other inmates with legal issues.

A prisoner claiming that prison officials have retaliated against him for exercising his constitutional rights must prove that: 1) the conduct in which he was engaged was constitutionally protected; 2) he suffered "adverse action" at the hands of prison officials; and 3) his

constitutionally protected conduct was a substantial or
motivating factor in the decision of the defendants. *Carter
v. McGrady,* 292 F.3d 152, 158 (3d Cir. 2002).  "Once a
prisoner has made his *prima facie* case, the burden shifts to
the defendant to prove by a preponderance of the evidence
that it 'would have made the same decision absent the
protected conduct for reasons reasonably related to
penological interest.'" *Id.* (quoting *Rauser v. Horn*, 241 F.3d
330, 334 (3rd Cir. 2001)).

        The defendants contend that they are entitled to
summary judgment on the plaintiff's retaliation claim because
the plaintiff was not punished for engaging in
constitutionally protected conduct.

        First, the defendants contend that the plaintiff does
not possess a constitutional right to provide legal
assistance to fellow prisoners.

        In *Shaw v. Murphy,* 532 U.S. 223 (2001), the United
States Supreme Court addressed the question whether prisoners

30

possess a First Amendment right to provide legal assistance to other inmates that enhances the protection otherwise available under *Turner v. Safley,* 482 U.S. 78 (1987).  The Court noted that the effect of such a right would be that inmate-to-inmate correspondence that includes legal assistance would receive more First Amendment protection than correspondence without any legal assistance. *Id.* at 228.  The Court held that there is no such special right. *Id.*

The Court in *Shaw* noted that incarceration does not divest prisoners of all constitutional protections and that inmates retain certain protections of the First Amendment. *Id.* at 228-29.  However, the Court also noted that the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large and that in the First Amendment context some rights are simply inconsistent with the status of a prisoner or with the legitimate penological objectives of the corrections system. *Id.* at 229.  The Court noted that it has sustained proscriptions on media interviews with individual inmates, prohibitions on the activities of a prisoners' labor

31

union, and restrictions on inmate-to-inmate written

correspondence. *Id.*  The Court in *Shaw* looked back at *Turner*

and the Court observed that because the problems of prisons

are complex and intractable and because courts are ill

equipped to deal with those problems, in *Turner* the Court had

"adopted a unitary, deferential standard for reviewing

prisoners' constitutional claims: '[W]hen a prison regulation

impinges on inmates' constitutional rights, the regulation is

valid if it is reasonably related to legitimate penological

interests.'" *Id.* (quoting *Turner, supra,* 482 U.S. at 89).


    The Court reasoned and held:

> Because *Turner* provides the test for
> evaluation prisoners' First Amendment challenges,
> the issue before us is whether *Turner* permits an
> increase in constitutional protection whenever a
> prisoner's communication includes legal advice.
> We conclude that it does not.  To increase the
> constitutional protection based upon the content
> of a communication first requires an assessment
> of the value of that content.  But the *Turner*
> test, by its terms, simply does not accommodate
> valuations of content.  On the contrary, the
> *Turner* factors concern only the relationship
> between the asserted penological interests and
> the prison regulation.
>
> Moreover, under *Turner* and its predecessors,
> prison officials are to remain the primary

arbiters of the problems that arise in prison
management.  If courts were permitted to enhance
constitutional protection based on their
assessments of the content of the particular
communications, courts would be in a position to
assume a greater role in decisions affecting
prison administration.  Seeking to avoid
"unnecessarily perpetuat[ing] the involvement of
the federal courts in affairs of prison
administration," we reject an alteration of the
*Turner* analysis that would entail additional
federal-court oversight.

Finally, even if we were to consider giving
special protection to particular kinds of speech
based upon content, we would not do so for speech
that includes legal advice.  Augmenting First
Amendment protection for inmate legal advice
would undermine prison officials' ability to
address the "complex and intractable" problems of
prison administration.  Although supervised
inmate legal assistance programs may serve
valuable ends, it is "indisputable" that inmate
law clerks "are sometimes a menace to prison
discipline" and that prisoners have an
"acknowledged propensity . . . to abuse both the
giving and the seeking of [legal] assistance."
Prisoners have used legal correspondence as a
means for passing contraband and communicating
instructions on how to manufacture drugs or
weapons.  The legal text also could be an excuse
for making clearly inappropriate comments, which
"may be expected to circulate among prisoners,"
despite prison measures to screen individual
inmates or officers from the remarks.

We thus decline to cloak the provision of
legal assistance with any First Amendment
protection above and beyond the protection
normally accorded prisoners' speech.  Instead,
the proper constitutional test is the one we set

33

forth in *Turner*.  Irrespective of whether the
correspondence contains legal advice, the
constitutional analysis is the same.

Under *Turner*, the question remains whether
the prison regulations, as applied to Murphy, are
"reasonably related to legitimate penological
interests."  To prevail, Murphy must overcome the
presumption that the prison officials acted
within their "broad discretion."  Petitioners ask
us to answer, rather than remand, the question
whether Murphy has satisfied this heavy burden.
We decline petitioner's request, however, because
we granted certiorari only to decide whether
inmates possess a special First Amendment right
to provide legal assistance to fellow inmates.

*Id.* at 230-32 (citations and footnotes omitted).


Based on *Shaw*, prisoners do not have a freestanding

constitutional right to provide legal assistance to other

prisoners.  However, prisoners do retain First Amendment

rights to speech and association that are implicated by

providing legal assistance to other inmates.  Based on *Shaw,*

regulations regarding those rights are analyzed under the

*Turner* standard.


Under *Turner,* prison regulations which impinge on an

inmate's constitutional rights may be valid as long as they

34

are reasonably related to legitimate penological interests.
*Turner*, *supra,* 482 U.S. at 89.  There are several factors to
consider when determining the reasonableness of a regulation
which impinges on a constitutional right, including: 1)
whether there is a "valid, rational connection" between the
prison regulation and the legitimate governmental interest
put forth to justify it; 2) whether there are alternative
means of exercising the right that remain open to prison
inmates; 3) the impact accommodation of the asserted right
will have on guards and other inmates and on the allocation
of prison resources generally; an 4) whether there are
alternatives that fully accommodate the prisoner's rights at
a *de minimis* cost to valid penological interests. *Id.* at 89-
91.

     In moving for summary judgment, the defendants have not
addressed the *Turner* factors.  They have not gone so far as
to establish that they have a provision regulating prisoner
assistance to other prisoners, and have not described the
content of the provision.  Given that the defendants have not
framed their summary judgment arguments in terms of the

35

*Turner* standard, and do not provide a particular description
of their regulation as to its terms and its enforcement, we
can not determine whether or not the plaintiff engaged in
constitutionally protected conduct in connection with his
provision of legal assistance to other inmates.[3]

In addition to claiming that he was transferred in
retaliation for providing legal assistance to fellow
prisoners, the plaintiff claims that he was transferred in
retaliation for filing his own grievances.  The defendants
concede that the filing of grievances is a constitutionally-
protected activity.  The defendants, however, contend that
the plaintiff can not establish that his filing of grievances
was a motivating factor in his transfer and they contend that
there was a legitimate penological reason for the transfer.

---

[3] Although the defendants moved for summary judgment as to
the plaintiff's retaliation claim, we note that the defendants
did not move for summary judgment as to the plaintiff's claim
that the DOC policy prohibiting inmates from assisting each
other with legal matters violates the First Amendment.

36

According to the defendants, the plaintiff was transferred from SCI-Mahanoy because his continued presence threatened defendant Roman's safety.  The defendants set forth the following facts as leading to the plaintiff's transfer.

On December 22, 2004, the plaintiff was in the library while defendant Roman was working there. *Defendants' Amended Statement of Undisputed Material Facts (doc. 123) at ¶15.* Defendant Roman observed that the plaintiff using one of the library typewriters and that he was intermittently looking to documents. *Id. at ¶17.*  It appeared to defendant Roman that the plaintiff did not want her to see the documents to which he was looking, as he was acting furtively and was keeping the documents covered by other papers when he was not looking to them. *Id. at ¶18.*

Finding the plaintiff's behavior to be suspicious, defendant Roman approached the plaintiff, asked him what he was typing and asked to see the documents that he was attempting to hide. *Id. at ¶21.*  From his reaction and body

37

language, it appeared to defendant Roman that the plaintiff still did not want her to see the documents. *Id. at ¶22.* Defendant Roman picked up the documents and discovered that they included documents belonging to other inmates. *Id. at ¶23.* As defendant Roman picked up the documents, the plaintiff made a move to snatch the documents back, grabbing a hold of the opposite edges. *Id. at ¶24.* Defendant Roman had a sufficiently strong grip on the documents to thwart the plaintiff's effort. *Id. at ¶25.*

Defendant Roman was the only staff member in the library at the time. *Id. at ¶26.* However, a number of other inmates were present some of whom she knew to be the plaintiff's friends. *Id.* Defendant Roman was very concerned for her safety and activated the personal alarm receiver that she wore while working inside the institution. *Id. at ¶27.* Officers arrived shortly thereafter and escorted the plaintiff out of the library. *Id. at ¶28.* Although the period of time between when she activated her alarm and when the officers arrived was short, defendant Roman believed that

the plaintiff could have harmed her before the officers had arrived. *Id. at ¶29.*

Defendant Roman issued the plaintiff a misconduct charging him with threatening her, refusing to obey an order and possession of contraband. *Id. at ¶30.*

Following the incident, defendant Roman continued to feel very threatened and fearful for her safety. *Id. at ¶31.* Defendant Roman expressed her safety concerns to her superiors. *Id. at ¶32.* Defendant Roman explained that the plaintiff was in the library frequently and that she was concerned that he would retaliate because of the misconduct she had issued to him. *Id. at ¶¶33 & 34.* She also explained that she was concerned because of the plaintiff's threatening and aggressive manner which prompted her to write the misconduct and she specifically mentioned her concern because there are periods of time when she must work alone. *Id. at ¶34.* Defendant Roman believed that the plaintiff's continued presence at the institution permitted an unsafe and

threatening work environment for her and she told her
superiors this. *Id. at ¶35.*

    In light of defendant Roman's report, defendant Klem
determined that the plaintiff's continued presence at SCI-
Mahanoy threatened defendant Roman's safety, and defendant
Klem eventually filed a petition to transfer the plaintiff
from SCI-Mahanoy to separate him from defendant Roman. *Id. at
¶¶36 & 37.*  The transfer petition was approved. *Id. at ¶37.*

    The defendants contend that the plaintiff's involvement
in the grievance process was not a factor in the decision to
place the plaintiff in administrative custody and to petition
for the plaintiff's transfer and that the decision to place
the plaintiff in administrative custody and then to transfer
him in order to separate him from defendant Roman was
reasonably related to a legitimate penological interest - the
security of the institution.

    The plaintiff disputes the defendants' version of the
events.  The plaintiff denies that he threatened defendant

40

Roman or behaved in an aggressive manner. *Doc. 126 at* ¶34.
He also points out that the hearing examiner dismissed the
charge in the misconduct written by defendant Roman of
threatening an employee. *Id.*

Further, the plaintiff indicates that the account given
by defendant Roman in the misconduct she issued differs from
the account now given by the defendants.  The plaintiff
points out that in the misconduct, defendant Roman stated
that she picked up the plaintiff's paperwork, started to go
through it, found legal material belonging to other inmates
and called the CO at the Education Building. *Doc. 110,
Exhibit M.*  Then, in the misconduct, defendant Roman stated
that she attempted to look through the plaintiff's big folder
and that he then attempted to grab it in an aggressive way.
*Id.*  She felt threatened and used her alarm. *Id.*  The version
of events presented by the defendants in connection with the
instant summary judgment motion may be seen as different in
some minor details from the version of events given by
defendant Roman in the misconduct that she wrote.  The
materiality of the differences is uncertain.

41

The plaintiff indicates that while defendant Klem was touring the RHU on March 18, 2005, he stated to the plaintiff that it would save him a lot of paperwork if he had the plaintiff transferred.  The plaintiff contends that he was transferred less than two weeks after defendant Klem made this statement.  The plaintiff contends that this statement is evidence of a retaliatory intent.  Defendant Klem does not deny that he made the statement.  *Doc. 49 (Defendants' Answer to the Complaint) at ¶53.*  Rather, he asserts the statement was intended as a joke.  *Id.*[4]

The plaintiff has presented sufficient evidence to create a genuine factual dispute about whether his filing of grievances and his providing of legal assistance to other inmates was a substantial or motivating factor in the decision to transfer him and whether, if he had not filed

---

[4] The plaintiff also points to a perceived history of retaliation by the Department of Corrections against him while he was incarcerated at a different prison and against other prisoners.  However, the evidence pointed to by the plaintiff is remote from the acts that form the basis of the claims in this case, and is not relevant to the claims in this case.

grievances or provided legal assistance, the defendants would
have made the same decision to transfer him for reasons
reasonably related to a penological interest.  These disputes
are material to the question whether the defendants
retaliated against the plaintiff.  Accordingly, it will be
recommended that the defendants not he granted summary
judgment on the plaintiff's claim that he was placed in
administrative custody and then transferred in retaliation
for legally-protected conduct.

     D. Other Claims Addressed by the Defendants.

     The defendants construe the complaint as raising a
number of other claims that it is not clear were raised in
the complaint.  The defendants move for summary judgment on
those claims.

       1. Due Process Claims.

a. Misconducts.

Defendants Brzozowski, Wingard and Roman argue that they are entitled to summary judgment on the plaintiff's challenges to his misconducts because his punishment did not impose an atypical and significant hardship on him.

Pursuant to *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995), state created liberty interests protected by the Due Process Clause are "limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

We do not construe the complaint as raising a due process claim based on the misconducts that the plaintiff received.[5]  However, if the complaint is construed as raising

---

[5] Rather, the plaintiff's claim with respect to the
(continued...)

44

a due process claim with respect to the misconducts, then defendants Brzozowski, Wingard and Roman are entitled to summary judgment on such a claim based on *Sandin* because the punishment received by the plaintiff did not amount to an atypical and significant hardship on the plaintiff in relation to the ordinary incidents of prison life.

b. Confiscation of Legal Materials.

Defendants Brzozowski, Wingard and Roman contend that they are entitled to summary judgment on the plaintiff's claims regarding the confiscation of legal materials from the plaintiff because the plaintiff had an adequate state post-deprivation remedy available.

In *Parratt v. Taylor*, 451 U.S. 527 (1981), a state prisoner claimed that prison officials had negligently deprived him of his property without due process of law.  The

---

[5](...continued)
misconducts appears to be that he should not have been issued the misconducts because he has a First Amendment right to provide legal assistance to other inmates.

45

Court held that a random, unauthorized, negligent deprivation by state officials of a prisoner's personal property is not actionable under the due process clause where there exists a remedy under state law for reimbursement. *Id.* at 541-43. *Hudson v. Palmer,* 468 U.S. 517 (1984), extended this concept to include intentional unauthorized deprivations of property. The Court in *Hudson* reasoned:

> While *Parratt* is necessarily limited by its facts to negligent deprivations of property, it is evident . . . that its reasoning applies as well to intentional deprivations of property. The underlying rationale of *Parratt* is that when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know when the deprivations will occur. We can discern no logical distinction between negligent and intentional deprivations of property insofar as the 'practicality' of affording predeprivation process is concerned. The State can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct. Arguably, intentional acts are even more difficult to anticipate because one bent on intentionally depriving a person of his property might well take affirmative steps to avoid signaling his intent.

*Id*. at 533.  The Court in *Hudson* held that an unauthorized intentional deprivation of property does not violate the due

46

process clause provided that adequate state postdeprivation remedies are available. *Id.*  "For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." *Id.* (footnote omitted).

The basis for the holdings in *Parratt* and *Hudson* is that when the loss of property is through a random and unauthorized act by a state employee the state cannot predict when the loss will occur and thus the state cannot provide a meaningful hearing before the deprivation takes place. However, when the loss is pursuant to an established or de facto policy, procedure or custom, the state has the power to control the deprivation and must generally provide a predeprivation hearing. *Gillihan v. Shillinger*, 872 F.2d 935, 939 (10th Cir. 1989).  When the deprivation of an interest protected by the due process clause is through an established state policy or procedure, the reasoning of *Parratt* and *Hudson* is not applicable and the availability of an adequate state postdeprivation remedy is irrelevant. *Id.* at 940.

47

In the instant case, it is the defendants position that the documents confiscated from the plaintiff were contraband and that they were confiscated pursuant to DOC policy.  Thus, it does not appear that the availability of an adequate state postdeprivation remedy is relevant to any due process claim based on the confiscation of the documents.  We do not construe the complaint as raising a due process claim based on the confiscation of documents.  However, if the complaint is construed as raising such a claim, then defendants Brzozowski, Wingard and Roman are not entitled to summary judgment on that claim on the basis that there was an adequate state postdeprivation remedy available to the plaintiff.

c. Loss of Prison Job.

The defendants contend that they are entitled to summary judgment on the plaintiff's claim concerning the loss of his prison job because an inmate has no entitlement to a particular job or even to any job.

48

We do not construe the complaint as raising a due
process claim based on the loss of the plaintiff's job.
However, if the complaint is construed as raising such a
claim, then the defendants are entitled to summary judgment
on that claim because, pursuant to *Bryan v. Werner*, 516 F.2d
233, 240 (3d Cir. 1975), an inmate has no federally-protected
interest in prison employment.


2. Fourth Amendment Claim.


Defendant Wingard contends that he is entitled to
summary judgment on the plaintiff's Fourth Amendment claim
relating to the search of the plaintiff's cell.


The Fourth Amendment provides:

The right of the people to be secure in their
persons, houses, papers, and effects, against
unreasonable searches and seizures, shall not be
violated, and no Warrants shall issue, but upon
probable cause, supported by Oath or affirmation,
and particularly describing the place to be
searched, and the persons or things to be seized.


49

The Fourth Amendment's proscription against unreasonable searches does not apply within the confines of the prison cell. *Hudson v. Palmer,* 468 U.S. 517, 526 (1984). "The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions." *Id.*

We do not construe the complaint as raising a Fourth Amendment claim.  However, if the complaint is construed as raising a Fourth Amendment claim, then defendant Wingard is entitled to summary judgment on such a claim because pursuant to *Hudson* the Fourth Amendment's proscription against unreasonable searches does not apply within the confines of a prison cell.

V. Recommendations.

Based on the foregoing, it is recommended that the defendants' motion (doc. 96) for summary judgment be granted in part and denied in part.  It is recommended that defendant

Datchko be granted summary judgment.  If the complaint is construed to contain such claims, it is recommended that: defendants Brzozowski, Wingard and Roman be granted summary judgment on the due process claim based on the misconducts issued to the plaintiff; the defendants be granted summary judgment on the due process claim based on the loss of the plaintiff's job; and defendant Wingard be granted summary judgment on the Fourth Amendment cell search claim.  It is otherwise recommended that the defendants' motion for summary judgment be denied.  Finally, it is recommended that the case be listed for trial on the remaining claims.

/s/ J. Andrew Smyser
J. Andrew Smyser
Magistrate Judge

Dated:  March 24, 2008.

51