1

1              IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
2                    HARRISBURG DIVISION

3

4   KENNETH B. DAVENPORT            :   CASE NO.
                                    :
5          v.                       :   4:05-CV-2347
                                    :
6                                   :
    SHARON BURKS, ET AL
7

8

9              TRANSCRIPT OF PROCEEDINGS
                    SETTLEMENT
10

11

12          BEFORE:      HON. JOHN E. JONES, III

13          DATE:        August 6, 2010
                         11:45 a.m.
14
            PLACE:       Judicial Conference Room
15                       8th Floor
                         Federal Building
16                       Harrisburg, Pennsylvania

17          BY:          Wendy C. Yinger, RPR, CRR
                         U.S. Official Court Reporter
18

19

20   APPEARANCES:

21   KENNETH L. RACKOWSKI, ESQUIRE
         For the Plaintiff
22
     KENNETH B. DAVENPORT, PLAINTIFF
23       via videoconference

24   GWENDOLYN T. MOSLEY, ESQUIRE
         For the Defendants
25

1      THE COURT:  Mr. Davenport, we're trying to establish

2 a land line, so if we drop you again it won't interrupt our

3 ability to proceed.  We're on the record in the matter of

4 Davenport versus Burks, et al, and numerous Defendants.  Wendy

5 has the caption and she'll apply that.  We are present in

6 Harrisburg.  We have conducted a settlement conference for the

7 last almost three hours.  I'd like, Liz, if you would swear in

8 -- my deputy is here.  Would you swear in Mr. Davenport,

9 please.

10      (Whereupon, Mr. Davenport was sworn.)

11      THE COURT:  All right.  After extensive discussion

12 with the parties, it's the Court's understanding that a

13 possible settlement works around these lines:  That the Court

14 would enter a 90-day closing order in this case; that the

15 Defendants would pay within that interval to the Plaintiff the

16 sum of $5000.00.

17      In addition to that, it's my understanding that there

18 needs to be some clarification, and I recognize that this is a

19 sticking point, with respect to procedures in the law library

20 where Mr. Davenport finds himself, particularly at Dallas.  The

21 purpose of this agreement, if it is an agreement, is not to

22 attempt to overwrite any policies or procedures of the

23 Department of Corrections.

24      It's the Court's understanding that, from Mr.

25 Davenport's standpoint, there has been some unclarity as to

1  what he is and is not permitted to do within the law library.

2  My suggestion is that the settlement should be governed by

3  this:  That Mr. Davenport, when he is in the prison law

4  library, will have the privilege, but not the right, subject to

5  the administrative procedures of the prison, to discuss with

6  other inmates within the library their legal affairs and to

7  review their legal affairs with them so long as it is for an

8  appropriate purpose.

9          And that would be the counseling and discussion with

10 other inmates about their legal affairs.  He could not conduct

11 a legal clinic within the library.  He could not breach the

12 peace.  He could not cause disturbance within the library.  He

13 must adhere to all the other administrative regulations, in

14 fact all regulations in the institution, including that he is

15 permitted to be in the library as according to time schedules

16 that are pre-arranged as per present policy.  But if he does

17 that, it's my understanding that, that is not inconsistent with

18 the prison policy.

19         Now before I go to Mr. Davenport, Ms. Mosley, is that

20 an accurate statement of what Mr. Davenport is permitted and it

21 is a privilege to do?

22         MS. MOSELY:  It's the use of the word privilege, Your

23 Honor.

24         THE COURT:  Well, I use privilege rather than right,

25 Ms. Mosley.  That's why I used that word.  It was very

1 intentional.

2          MS. MOSELY:  Right.

3          THE COURT:  Anything that Mr. Davenport is allowed to

4 do along those lines, as I understand it, is a privilege and a

5 privilege can be denied administratively if he abuses the

6 privilege.  And I specifically avoid the word right based on

7 conversations I had with counsel.  Is that acceptable?

8          MS. MOSELY:  That's acceptable.

9          THE COURT:  All right.  Mr. Davenport, is that

10 acceptable to you?

11          THE DEFENDANT:  Yeah.  Yeah, just one clarification.

12 Outside -- say if I have drafts of materials or something I am

13 doing for another individual, how is that being viewed in terms

14 of contraband?

15          THE COURT:  Well, you cannot take anybody else's

16 materials out of the law library and keep them as your own, as

17 you and I discussed as a condition of the settlement.  We can't

18 rewrite or overwrite the Department of Corrections' policy that

19 you can't take somebody else's property back to your cell.

20 Whether we agree or disagree with that policy, it is what the

21 policy is.

22          So anything that you do within the law library, to

23 the extent that you are utilizing somebody else's property

24 within the law library, it has to stay with them and go back to

25 their cell as your property has to go back to your cell.

5

 1  That's the point.  And I can't change that.  And that's not

 2  anything that you could achieve in this lawsuit in any event.

 3          MR. DAVENPORT:  No, I wasn't saying somebody else's

 4  original materials.  All I'm saying, Judge, if I have a letter

 5  here that I did for John Doe to his attorney, Ms. Mosley, under

 6  the current policy, that should be permissible, right?

 7          THE COURT:  Well, what do you mean?  Can you send

 8  that letter?

 9          MR. DAVENPORT:  No.  I'm saying, if I do a letter for

10  some person --

11          THE COURT:  If you do the letter for them while you

12  are in the library, and you hand it to them, it appears to the

13  Court that's permissible.  They take it with them, mail it, do

14  whatever they want to do.  It's just that you can't take

15  anything that would be their legal papers or property back to

16  your cell.  Do you understand that?

17          MR. DAVENPORT:  Correct.

18          MS. MOSELY:  There is another issue, and that has to

19  do with your using library facilities and equipment such as

20  typewriters to do the work of other inmates.  As I understand

21  it, that is still prohibited.  So you're not going to be

22  permitted to do that.  This writing the letter, the typewriters

23  and other equipment, they're for each inmate's own personal use

24  and not for you to help someone else.

25          THE COURT:  That gets Mr. Davenport to my comment

1 about conducting a legal clinic.  You can't, you know, perhaps

2 go as far as you want to in assisting others and preparing

3 paperwork on hardware or other facilities that they have in the

4 library.  But the gist of the arrangement is that you can have

5 conversations.

6          (The videoconference went down again and reception

7            was restored.)

8          THE COURT:  Okay.  We're back on.  Mr. Davenport, so

9 the gist of this is that you can have conversations.  You can

10 interpret.  You can chat with inmates about their legal issues.

11 But when it comes down to serving as the preparer of things for

12 them, using the prison facilities, and that would be

13 typewriters apparently, word processors, whatever else, they

14 have to do that for themselves.  That's the practice and the

15 procedure.  Do you understand that?

16          MR. DAVENPORT:  Right, yeah.  But understand this

17 though, I have a typewriter in my own cell, so I'm suggesting

18 that, if I choose to, I can type a letter for somebody else?

19          THE COURT:  Well, I'm talking about what happens in

20 the prison library.  I don't want to broaden this beyond that.

21          MR. DAVENPORT:  Right, okay.

22          THE COURT:  That's the understanding.  I don't want

23 to go where I don't know.

24          MR. DAVENPORT:  Okay.

25          THE COURT:  I'm not here to change prison procedures

7

1  to that extent.  I'm talking about your interaction with other

2  inmates in the law library.  That's what we're discussing.

3  Okay?

4          MR. DAVENPORT:  Okay.

5          THE COURT:  Is that acceptable to you?

6          MR. DAVENPORT:  Yes, sir.

7          THE COURT:  Is that acceptable to the Defendants?

8          MS. MOSELY:  Yes.

9          THE COURT:  All right.  So the Court, Mr. Davenport,

10  and Ms. Mosley will enter a 90-day closing order.  That's

11  principally for the purpose of allowing the $5000.00 to be

12  paid, and the Court will take no other steps.  We will not have

13  to take any other steps unless something impedes or impairs

14  your ability to fully consummate the settlement at this time.

15  And I should ask Plaintiff's counsel, is that acceptable to

16  you?

17          MR. RACKOWSKI:  It is, Your Honor.

18          THE COURT:  All right.

19          (Whereupon, the settlement conference concluded at

20            11:55 a.m.)

21

22

23

24

25

8

**CERTIFICATION**

I hereby certify that the proceedings and evidence are contained fully and accurately in the notes taken by me on the within proceedings, and that this copy is a correct transcript of the same.


/s/ Wendy C. Yinger

Wendy C. Yinger, RPR, CRR
U.S. Official Court Reporter
(717) 440-1535


The foregoing certification of this transcript does not apply to any reproduction by any means unless under the direct control and/or supervision of the certifying reporter.